UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**DARRELL HUDSON (#468307)**  CIVIL ACTION

**VERSUS**

**BURL CAIN, ET AL.**  NO. 11-0531-BAJ-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The State has filed a response in opposition to the petitioner's application. There is no need for oral argument or for an evidentiary hearing.

The petitioner, Darrell Hudson, challenges his convictions, entered in 2003 in the Twenty-Third Judicial District for the Parish of Ascension, State of Louisiana, on one count of forcible rape, one count of aggravated rape and one count of aggravated incest. He contends (1) that the trial court erred in denying his challenge to the State's allegedly discriminatory exercise of peremptory challenges based upon *Batson v. Kentucky*, 476 U.S. 79 (1986), (2) that the trial court erred in granting the State's request, on the morning of trial, to consolidate the charges levied against him, (3) that the trial court erred in failing to grant a mistrial when a State witness twice testified about matters that the Court had ruled were inadmissible as undenly inflammatory and prejudicial, (4) that he was provided with ineffective assistance of counsel on appeal, and (5) that the trial court erred in denying challenges for cause as to two prospective jurors.[1]

---

1. Although the petitioner makes reference in his supporting memorandum to an additional claim relative to an alleged excessive sentence, he expressly abandons that claim in the memorandum. *See* Rec. Doc. 1-1 at p. 26.

Factual Background

The following recitation of facts is taken from the decision of the Louisiana Court of Appeals for the First Circuit:

> The victim, who was a fourteen-year-old eighth grader at the time of trial, testified that the defendant, her stepfather, repeatedly raped her for several years. The defendant began dating the victim's mother, D.J., when the victim was approximately three years old. The couple later married. When the victim was very young, the defendant began to sexually abuse her. The abuse began with what the defendant called the "Feel Good" game. The defendant would rub his penis against the victim's vagina until he ejaculated. The defendant performed the "Feel Good" game on the victim on numerous occasions, "like a couple of times a week." The defendant also taught the young victim how to masturbate him. When the victim was approximately seven or eight years old, the abuse escalated. The defendant began inserting his penis into the victim's vagina. According to the victim, the defendant did not fully penetrate her initially. She explained, "each time we did it, he would go – do it a little deeper each time until he got it all the way in, and then he just started having intercourse." The defendant continued having intercourse with the victim. The victim did not tell anyone about the abuse because the defendant threatened to kill her and her family if she did.
>
> On July 13, 2001, D.J. took the victim to see Dr. Dawn Vick, her pediatrician. D.J. made the appointment to see the pediatrician after she discovered the defendant in the victim's bedroom with the door locked. D.J. found the defendant's presence in the girl's room suspicious and suspected that the defendant might have sexually abused the victim. A urine test at Dr. Vick's office confirmed that the twelve-year-old victim was pregnant. When asked who impregnated her, the victim first indicated that it was a boy she met at the skating rink. Later that same day, however, the victim disclosed that the story about the boy at the skating rink was untrue. The victim told her mother that the defendant impregnated her and that he had been sexually abusing her for many years.
>
> On November 21, 2001, approximately three months after she turned thirteen, the victim gave birth to a baby boy who was placed for adoption. DNA testing confirmed that the defendant was the father of the baby.

*State v. Hudson, supra,* 2006 WL 3108264 at pp. 1-2.

Procedural Background

The petitioner was charged in November, 2001, by separate grand jury indictments, with

2

one count of forcible rape, one count of aggravated incest, and one count of aggravated rape. A request by the prosecution to consolidate the charges for trial was granted by the trial court on May 19, 2003, the morning of trial. When asked by the trial judge whether there was any objection to the consolidation, the defendant's attorney entered an objection, but noted that such objection was made "just for the record," and he presented no argument and no assertion that he was surprised, prejudiced, or unprepared for a trial of the consolidated offenses. *See* Tr. Rec. at p. 199. After a jury trial, the petitioner was found guilty as charged. Upon denial of the petitioner's Motion for New Trial and Motion for Post Verdict Judgement of Acquittal, the petitioner was sentenced, on October 21, 2003, to forty (40) years in confinement in connection with the forcible rape charge, twenty (20) years in confinement in connection with the aggravated incest charge, and life imprisonment, without the benefit of probation, parole or suspension of sentence, in connection with the aggravated rape charge, with these sentences to be served consecutively. The petitioner filed a motion to reconsider the sentence, which motion was denied in June, 2005.[2]

On July 25, 2005, the petitioner filed a timely appeal before the Louisiana Court of Appeal for the First Circuit, asserting as error (1) that the trial court erred in denying a *Batson v. Kentucky* challenge to the State's alleged discriminatory exercise of peremptory challenges as to two jurors, (2) that the trial court erred in granting the State's motion to consolidate the offenses prior to trial, (3) that the trial court erred in denying a motion for mistrial when a witness twice testified regarding matters which the court had ruled to be inflammatory and overly prejudicial,

---

2. The certified copy of the state court record provided to this Court does not appear to include a record of the proceedings conducted in connection with the petitioner's motion to reconsider sentence.

and (4) that the sentence imposed was excessive. On November 3, 2006, the appellate court affirmed the convictions and sentences. *State v. Hudson*, 941 So.2d 201, 2006 WL 3108264 (La. App. 1st Cir. 2006). The petitioner thereafter sought timely supervisory review before the Louisiana Supreme Court, which Court denied review on August 31, 2007. *State v. Hudson,* 962 So.2d 425 (La. 2007). Upon the failure of the petitioner to file a subsequent application for a writ of certiorari in the United States Supreme Court, his conviction became final on November 29, 2007, upon expiration of the ninety-day period allowed for him to do so.

Approximately eight months later, on or about August 6, 2008, the petitioner filed an application for post-conviction relief ("PCR") in the state trial court,[3] contending (1) that he was provided with ineffective assistance of counsel on appeal when his appellate attorney failed to assert as error a claim regarding the trial court's denial of challenges for cause as to certain jurors, and (2) that the trial court erred in denying challenges for cause as to those jurors. Pursuant to written Order dated October 9, 2008, the trial court denied the petitioner's application with stated reasons. It appears, however, that the referenced Order may not have

---

3. Although the petitioner's application for post-conviction relief was docketed as filed in the state trial court on August 26, 2008, the United States Court of Appeals for the Fifth Circuit has concluded that federal habeas courts within the State of Louisiana must apply Louisiana's "mailbox rule" when determining the filing date of a petitioner's state court filings. Accordingly, pleadings submitted by a habeas petitioner are considered to be "filed" in state court as of the moment that the prisoner places them in the prison mail system for filing, not on the date that the pleadings are ultimately docketed by the receiving court. *See Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006); *Lane v. Rogers*, 2012 WL 3160034, *1 n. 3 (E.D. La. June 21, 2012). Thus, inasmuch as the petitioner apparently signed his state court application on August 6, 2008, and presumably gave it to prison officials for filing on that date, the Court will utilize that date as the presumptive date of filing. In addition, in hereafter referencing the dates of filing of the petitioner's various pleadings in the state courts and in this Court, the Court will utilize the dates that the petitioner signed his respective pleadings as the dates of filing thereof in the respective courts.

been mailed to the petitioner by the state court clerk's office until three months later, on January 9, 2009, and that it may not have been received by him until January 13, 2009. *See* Rec. Doc. 12 at pp. 12-14. Thereafter, on or about January 23, 2009, the petitioner filed in the state trial court a Notice of Intent to file a supervisory writ of review in the intermediate appellate court, and he requested a return date for the filing of such writ. Prior to obtaining a return date, however, the petitioner filed his writ application in the appellate court on January 28, 2009, which application was denied by the appellate court, without comment, on May 28, 2009. Pursuant to a writ application thereafter filed with the Louisiana Supreme Court on June 15, 2009, the petitioner sought further review in that Court, and the Supreme Court denied review, without comment, on May 20, 2011. *See State ex rel. Hudson v. State*, 63 So.3d 969 (La. 2011).

Finally, on or about August 1, 2011, approximately 2½ months after the denial of writs by the Louisiana Supreme Court, the petitioner filed the instant habeas corpus application in this Court. The State contends that the petitioner's application in this Court is untimely and argues, in the alternative, that the application should be denied as being without substantive merit.

LEGAL ANALYSIS

The Petitioner's Application Is Untimely

Pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to federal habeas corpus claims brought by prisoners in state custody. This limitations period begins to run on the date upon which the judgment becomes final through the conclusion of direct review or through the expiration of time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). As provided by the referenced statute, the time during which a properly filed application for state post-conviction or other collateral review is thereafter pending before the

5

state courts with respect to the pertinent judgment or claim shall not be counted toward any part of the one-year limitations period. 28 U.S.C. § 2244(d)(2). To be considered "properly filed" for purposes of § 2244(d)(2), an application's delivery and acceptance must be in compliance with the applicable laws and rules governing filings. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005), *citing Artuz v. Bennett*, 531 U.S. 4, 8 (2000). A state post-conviction relief application is considered to be "pending" both while it is before a state court for review and also during the interval of time (thirty days in the State of Louisiana) after a lower state court's disposition of an application while the petitioner is procedurally authorized by state law to file a timely application for further appellate review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).

In the instant case, the petitioner's conviction became final on November 29, 2007, ninety (90) days after denial of his application for supervisory review in the Louisiana Supreme Court in connection with his direct appeal.[4] The one-year time clock then began to run on that date, and it appears that the petitioner allowed two hundred and fifty-one (251) days of un-tolled time to elapse prior to his filing of a PCR application in the state district court on or about August 6, 2008. It further appears that, upon completion of proceedings in connection with the petitioner's PCR application, through denial of the petitioner's request for supervisory review in the Louisiana Supreme Court on May 20, 2011, the petitioner then allowed an additional seventy-three (73) days of un-tolled time to elapse prior to his filing of a federal habeas corpus

---

4. The State incorrectly fails to include in its calculation of the limitations period the 90-day period allowed for the petitioner to seek review in the United States Supreme Court, which period must be included in determining the finality of a state court conviction. *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).

application in this Court on or about August 1, 2011. Accordingly, it appears that, prior to commencement and after completion of the petitioner's PCR proceedings, a total of three hundred and twenty-four (324) days elapsed on the one-year time clock during which the petitioner did not have pending any properly filed application for post-conviction or other collateral relief before the state courts. The question then becomes whether, during the intervening time period, *i.e.*, during the time after the initial filing of the petitioner's PCR application in the state district court and prior to his completion of appellate review in connection with the PCR application, through and including the decision of the Louisiana Supreme Court, his application ceased to be pending and/or ceased to be properly filed for any period of time. *See Melancon v. Kaylo, supra*, 259 F.3d at 406-07 (implicitly recognizing that PCR proceedings must remain both pending and properly filed in order for the limitations period to remain tolled).

As noted above, upon the initial filing of the petitioner's PCR application in state court on August 6, 2008, the limitations period became tolled, and it remained tolled until October 9, 2008, on which date the state trial court issued a written Ruling denying the petitioner's application. Pursuant to Rule 4-3 of the Uniform Rules of the Louisiana Courts of Appeal, the petitioner then had, in the absence of an extension of time, thirty (30) days from the date the Ruling was signed, or until November 8, 2008, within which to file a timely application for supervisory review before the Louisiana Court of Appeal for the First Circuit. Inasmuch as it is well-settled that an application for post-conviction relief remains pending both during the time that it is before the state court for consideration and also during the time after decision when the petitioner is procedurally authorized to proceed to the next level of state court review, *Melancon*

*v. Kaylo, supra*, 259 F.3d at 406, the petitioner's application remained pending – and the limitations period remained tolled – until that latter date, November 8, 2008.[5] After that date, however, and even if the petitioner did not receive notice of the Ruling until January 13, 2009, as he claims, tolling nonetheless ceased because the 30-day time period allowed by state procedural rule had passed. *See Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000) (finding that, even accepting the petitioner's assertion that he did not receive notice of the state court's denial of his application, "the state petition was nonetheless "not 'pending' during that subsequent four-month delay"). As a result, an additional eighty-one (81) days of un-tolled time elapsed before the petitioner filed his writ application in the state appellate court on January 28, 2009. When this eighty-one (81) days is added to the three hundred and twenty-four (324) days which have already been determined by this Court to have elapsed on the one-year time clock, more than one year, or a total of four hundred and five (405) days, elapsed during which the petitioner did not have pending before the state courts any properly filed application for post-conviction or other collateral relief. Thus, absent any further tolling, either statutory or equitable, the petitioner's application in this Court is untimely.

Notwithstanding the foregoing, the petitioner contends that the referenced eighty-one (81) days which the Court has found elapsed after the October 9, 2008, Ruling by the trial court on his PCR application and prior to his filing of a writ application in the intermediate appellate court should not be counted against him. The plaintiff's contention in this regard may be

---

5. The State, in its calculation of the limitations period, incorrectly fails to afford the petitioner the benefit of statutory tolling during the 30-day interval after the Ruling on his application in the state trial court, during which interval the petitioner was authorized by state law to proceed to the next level of state appellate review through the filing of a writ application in the next higher court.

interpreted as asserting that the state court's three-month delay in sending him notification of the denial of his PCR application should result in either (1) additional statutory tolling under 28 U.S.C. § 2244(d)(1)(B), which provides for tolling of the limitations period when the petitioner faces an "impediment to filing an application created by State action in violation of the Constitution or laws of the United States," or (2) equitable tolling in light of the particular facts of this case. In this regard, equitable tolling of the limitations period may be available in rare instances if "some extraordinary circumstance stood in his way and prevented timely filing." *See Holland v. Florida*, 560 U.S. 631, 649 (2010). The Court will address both potential avenues for additional tolling in the instant case.[6]

## Statutory Tolling

As previously noted, 28 U.S.C. § 2244(d)(1)(B) provides that the limitations period does not run against a habeas petitioner during the period that he faces a state-created impediment to filing which is "in violation of the Constitution or laws of the United States." By its terms, this provision applies only "if the applicant was prevented from filing by such State action." Thus, a petitioner alleging a state-created impediment under this provision has the burden of showing that "(1) he was prevented from filing a petition (2) by State action (3) in violation of the Constitution or federal law." *Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003). For two reasons in the instant case, the statutory tolling provided by this provision is not applicable to the petitioner's federal habeas corpus application before this Court.

---

6. For purposes of this Report and Recommendation, the Court will accept that the state court clerk's office did not send the petitioner notice of the October 9, 2008, Ruling on his PCR application until three months later on January 9, 2009, and that the petitioner did not in fact receive such notification until January 13, 2009.

First, the Fifth Circuit has strongly suggested that the statutory tolling which results from a state-created impediment under this provision is not triggered by a state court's mere delay in notifying a petitioner regarding the issuance of a ruling or order in the state court proceedings. Thus, in *Critchley v. Thaler*, 586 F.3d 318 (5th Cir. 2009), where the Fifth Circuit found that statutory tolling under this section was nonetheless appropriate in that case – both because the state court had repeatedly refused to *file* post-conviction relief applications submitted by the petitioner and also because the state court had engaged in a *practice* of refusing to file and process the applications of prisoners – the Court noted that when the state merely "fails to provide notice of its ruling on a state habeas petition to the affected petitioner ..., equitable tolling rules govern that situation" instead of statutory tolling. *See id.* at 321 n. 3, *citing Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009). *See also Clarke v. Rader*, 721 F.3d 339, 343 (5th Cir. 2013) (noting that "[w]e have serious reservations about whether the State's failure to notify [the petitioner] of the ... denial provides a basis for a statutory tolling claim rather than merely an equitable tolling claim"); *Williams v. Thaler*, 400 Fed. Appx. 886, 889 (5th Cir. 2010) (noting that it is "unclear" whether a state's failure to provide notice of a writ denial "is a violation of constitutional or federal law under § 2244(d)(1)(B)"). Thus, it does not appear that the mere error of the state court clerk's office in this case, in failing for three (3) months to provide written notice to the petitioner of the October 9, 2008, denial of his PCR application, constitutes State action which is "in violation of the Constitution or laws of the United States" and is sufficient to invoke the statutory tolling provided by § 2244(d)(1)(B).

Further, in order for the statutory tolling provided by the referenced provision to apply, the petitioner must show that the state-created impediment in fact prevented him from filing a

timely habeas corpus application in this Court. As previously explained, however, when the petitioner filed his initial PCR application in state court on August 6, 2008, only 251 days had elapsed from the one-year limitations period, and he had 114 days remaining within which to file a timely federal habeas application. The limitations period thereafter remained tolled until November 8, 2008, thirty (30) days after the Ruling of the state trial court denying the application. Between that date, November 8, 2008, and January 28, 2009, when the petitioner filed his application for supervisory review in the intermediate state appellate court, an additional 81 days of un-tolled time elapsed from the limitations period. At that point, the petitioner still had 33 days remaining in the limitations period to file his federal habeas application. The limitations period thereafter remained tolled during the pendency of the petitioner's appellate review proceedings before the Louisiana appellate courts and, as a result, he *still* had 33 days remaining upon conclusion of appellate proceedings on May 20, 2011, when the Louisiana Supreme Court finally denied review. Notwithstanding, the petitioner then waited an additional 73 days, approximately 2½ months, before filing his then-untimely federal habeas corpus application in this Court on August 1, 2011. Thus, the petitioner was not in fact prevented from filing a timely habeas application in this Court by the delayed notice provided by the trial court relative to the denial of his PCR application. Instead, his failure to file a timely federal application was apparently the result of his mistaken belief that the 81-day period encompassed by the referenced delayed notice would not be counted against him and that he therefore had more time remaining after the writ denial by the Louisiana Supreme Court.

      A somewhat analogous factual situation was presented in *Clarke v. Rader, supra*, wherein the Fifth Circuit concluded that statutory tolling under § 2244(d)(1)(B) did not apply.

In *Clarke*, the petitioner waited 269 days after the finality of his conviction to commence his PCR proceedings and, as here but for different reasons, an additional period of approximately 50 days of un-tolled time elapsed during the pendency of the petitioner's state PCR proceedings. Upon the conclusion of state appellate review in connection with his PCR proceedings, the petitioner still had approximately 46 days remaining within which to file a timely federal habeas application. The petitioner apparently believed however, as here, that the referenced 50-day period would not be counted against him, and he also complained that the final decision denying his PCR application in the state supreme court was not timely forwarded to him by the clerk of that court. Accordingly, he asserted that the referenced failure of notice constituted a state-created impediment to timely filing which warranted the application of statutory tolling. The Fifth Circuit disagreed, however, finding that the petitioner had received actual notice of the supreme court denial from his attorney with sufficient time remaining to still file a timely federal habeas application, and yet had waited an additional two months to do so. Thus, the Court concluded that the petitioner had failed to meet his burden of showing "that the State's failure to notify him ... played any role in his failure to timely file since [his] counsel mailed him notice within weeks of the denial and before § 2244(d)(1)(A)'s one-year limitations period expired." *See also McNac v. Thaler*, 480 Fed. Appx. 338, 344 (5th Cir. 2012) (finding no statutory tolling where, upon conclusion of a 4-month delay caused by the state court clerk's failure to process the petitioner's application, he still had time within which to file a timely federal application and so was not *prevented* from filing by the delay). Further, the Court found in *Clarke*, as this Court finds in this case, that the petitioner's failure to timely file was more likely a result of the petitioner's "erroneous belief" that the period of un-tolled time which elapsed during the

12

pendency of his state PCR proceedings would not be counted against him. Thus, in the instant case, as in *Clarke*, statutory tolling does not apply because the petitioner "has not sustained his burden to show it was the State's failure to notify him ... that prevented him from timely filing his petition; instead, it was, in all probability, [his] mistaken assumption that he had [additional time] to timely file." *Id.* at 344. For this reason, statutory tolling under 28 U.S.C. § 2244(d)(1)(A) does not apply

### Equitable Tolling

The one-year federal limitations period is also subject to equitable tolling only "in rare and exceptional circumstances." *See United States v. Patterson*, 211 F.3d 927, 928 (5th Cir. 2000). The doctrine of equitable tolling "applies principally where the plaintiff is actively misled ... or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999). In order to be entitled to equitably tolling, "[a] petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006). Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. *Pace v. DeGuglielmo,* 544 U.S. 408, 418 (2005). Ignorance of the law, lack of knowledge of filing deadlines, a temporary denial of access to research materials or the law library, and inadequacies in the prison law library, are not generally sufficient to warrant equitable tolling. *Tate v. Parker*, 439 Fed. Appx. 375, 376 (5th Cir. 2011); *Felder v. Johnson*, 204 F.3d 168, 171-2 (5th Cir. 2000). Further, equitable tolling "is not intended for those who sleep on their rights." *Manning v. Epps,* 688 F.3d 177, 184 (5th Cir.

13

2012), *cert. denied*, ___ U.S. ___, 133 S.Ct. 1633 (2013). Thus, a federal habeas petitioner is required to act with diligence and alacrity both during the period allowed for the filing of state post-conviction review proceedings and also after the denial thereof by the state appellate courts. *See Ramos v. Director*, 2010 WL 774986, *4 (E.D. Tex. March 1, 2010). "The diligence required for equitable tolling purposes is reasonable diligence, ... not maximum feasible diligence," *Holland v. Florida*, 560 U.S. 631, 653 (2010) (internal quotation marks omitted), and equitable tolling decisions "must be made on a case-by-case basis." *Id.* at 649-50. In addition, it has been found that "[l]ong delays in receiving notice of state court action" may constitute extraordinary circumstances which warrant equitable tolling, *see Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009); *Phillips v. Donnelly, supra*, 216 F.3d at 511, but a petitioner is also required to act with due diligence after receiving such delayed notice. *Williams v. Thaler, supra*, 400 Fed. Appx. at 891.

In concluding that the petitioner is not entitled to equitable tolling in this case, the Court again finds the Fifth Circuit decision in *Clarke v. Thaler, supra*, to be instructive. In both this case and in *Clarke*, the respective petitioners lost approximately 8½ months from their one-year limitations periods before commencing state post-conviction review proceedings (269 days in *Clarke;* 251 days here). In addition, each petitioner similarly lost a period of time during the pendency of their state post-conviction review proceedings (approximately 50 days in *Clarke*; 81 days here), and both petitioners were under the mistaken legal impression that that period would not be counted against them. Finally, in each case, notwithstanding late notice from the state courts regarding certain rulings, the petitioners had a period of time remaining upon conclusion of state post-conviction review proceedings during which they could have filed timely federal

14

habeas corpus applications but failed to do so, at least in part because of their erroneous legal conclusions. In evaluating this factual scenario in *Clarke* and in upholding a denial of equitable tolling in that case, the Fifth Circuit concluded:

> Regardless of the length of the delay in notice, there is no evidence that this delay contributed to Clarke's untimely filing of his § 2254 petition. As explained above, the untimeliness of Clarke's § 2254 petition appears to have resulted from his mistaken belief that the one-year limitations period would not expire until May 2010. There is no indication that, had Clarke received notice earlier, he would have filed his § 2254 petition before April 30, 2010. Because he has failed to explain how his delay in receiving notice of the January 29, 2010 writ denial contributed in any way to his failure to timely file, Clarke has not shown an "extraordinary circumstance" that "prevented timely filing." Accordingly, we hold that the district court did not abuse its discretion in denying Clarke equitable tolling ....

721 F.3d at 345 (citations omitted).

In the instant case, as in *Clarke,* after the petitioner allowed 251 days to elapse before commencing his state court PCR proceedings, he mistakenly believed that the limitations period remained tolled during the entirety of his state PCR proceedings, *including* the 81 days which thereafter elapsed because of the delayed notice provided by the state court clerk's office after denial of his PCR application. *See* Rec. Doc. 12 at p. 4 (wherein the petitioner erroneously asserts that the filing of his writ application, because of the late notice, "was well within ... the window for timely seeking writs under state law" and that, accordingly, the "one-year prescriptive period was still tolled"). As a result, the petitioner believed that, upon completion of his PCR proceedings in the Louisiana Supreme Court on May 20, 2011, he still had approximately 114 days remaining (365 days minus 251 days) to file a timely federal habeas application. Instead, because of the additional 81 days which had elapsed during the pendency of the PCR proceedings, he in fact had only 33 days remaining (365 days minus 332 days), or until June 22, 2011, within which to do so. Notwithstanding, because he still had ample time

15

remaining to file his federal habeas application, the delay in notification was not in fact the cause of the petitioner's late filing. As a result, as in *Clarke, supra,* "the untimeliness of [the petitioner's] § 2254 petition appears to have resulted from his mistaken belief that the one-year limitations period would not expire until [a later date]." Thus, also as in *Clarke,* the petitioner has failed to carry his burden of showing "how his delay in receiving notice ... contributed in any way to his failure to timely file," and he thus "has not shown an 'extraordinary circumstance' that 'prevented timely filing'" so as to warrant equitable tolling.

Finally, the Court also looks to the diligence shown by the petitioner, or in this case the lack of apparent diligence, in pursuing federal habeas relief in light of the procedural posture of his state court proceedings. In this regard, it appears that upon the petitioner's receipt, on January 13, 2009, of the late notification provided by the state trial court relative to the October 9, 2008, denial of his PCR application, he waited three weeks, or until January 28, 2009, to file an application for supervisory writs with the intermediate state appellate court. In addition, he thereafter waited almost 2½ months after the May 20, 2011, denial of his writ application in the Louisiana Supreme Court before filing the instant habeas corpus proceeding in this Court on August 1, 2011. Considering that the petitioner was fully aware that there had been a lapse of time caused by the referenced delay in notice during the pendency of his PCR proceedings, it was not reasonable for the petitioner to expend that 2½ before pursuing his claims herein. *See Jones v. Stephens,* 541 Fed. Appx. 499, 504 (5th Cir. 2013) (upholding a denial of equitable tolling and noting the petitioner's failure to file his federal habeas petition for "more than two months" after the conclusion of state proceedings); *Derouselle v. Cain,* 279 Fed. Appx. 320, 321 (5th Cir. 2008) (same); *Gordon v. Quarterman,* 236 Fed. Appx. 975, 976 (5th Cir. 2007) (same);

*Saunders v. Thaler*, 2010 WL 2652279, *3 (N.D. Tex. May 13, 2010) (same, where the petitioner waited less than two months, or 51 days, after the conclusion of state proceedings before filing his federal habeas corpus petition). Further, whereas the petitioner was not legally required to file an earlier "protective" federal habeas corpus application in order to show that he was acting with diligence, *see Palacios v. Stephens*, 723 F.3d 600, 607-08 (5th Cir. 2013), *citing Pace v. DeGuglielmo*, 544 U.S. 408, 416 (2005), such a filing would have protected him from the running of the limitations period, and his failure to do so may be seen to weigh against a finding of equitable tolling in this case. *Id.*

Based on the foregoing, the Court concludes that the petitioner's application is untimely and that he is not entitled to either statutory or equitable tolling. Accordingly, the instant habeas corpus application must be dismissed.

## Certificate Of Appealability

Pursuant to statute, an appeal may not be taken to the federal court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal, this Court may nonetheless address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right *and* that jurists of reason would find it debatable whether the district court

was correct in its procedural ruling." *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) (emphasis in original). In the instant case, the Court finds that reasonable jurists would not debate the denial of the petitioner's § 2254 application or the correctness of the procedural ruling. Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

## RECOMMENDATION

It is recommended that the petitioner's application for habeas corpus relief be denied. It is further recommended that in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on June 17, 2014.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DARRELL HUDSON (#468307)                                   CIVIL ACTION

VERSUS

BURL CAIN, ET AL.                                          NO. 11-0531-BAJ-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on June 17, 2014.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　　RICHARD L. BOURGEOIS, JR.
　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE